The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ELAINE MARIE THOMAS,<br>Defendant. | NO. CR20-5244BHS<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Seth Wilkinson, Assistant United States Attorney, Defendant Elaine Thomas, and Defendant's attorney, John Carpenter, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **The Charge**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right, and to enter a plea of guilty to the crime of Major Fraud Against the United States, in violation of Title 18, United States Code, Section 1031, as charged in Count 1 of the Indictment.

Plea Agreement - 1
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2. **Elements of the Offense.** The elements of the offense to which Defendant is pleading guilty are as follow:

    a. The defendant knowingly executed a scheme with intent to defraud the United States, or to get money or property by using materially false representations, pretenses or promises;

    b. The scheme involved the receipt of money as a contractor of the United States or as a subcontractor or a supplier on a contract with the United States; and

    c. The value of the contract exceeded $1 million.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows: a period of imprisonment of up to ten years; a fine of up to $1,000,000, a period of supervised release of up to three years, and a $100 special assessment. If the defendant is sentenced to probation, the maximum period of probation is five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further

Plea Agreement - 2
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

4. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of Defendant's peers;

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

   g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

   h. The right to appeal a finding of guilt or any pretrial rulings.

5. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further

Plea Agreement - 3
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

6.    **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7.    **Statement of Facts**. Defendant admits Defendant is guilty of the charged offense. The parties agree on the following facts:

    a.    ***Background:*** Between 1977 and May 2017, defendant Elaine Thomas worked as a metallurgist for a steel foundry in Tacoma, Washington. Since 2008, the foundry has been owned and operated by Bradken, Inc.

    b.    Bradken is the leading supplier of certain high-yield steel castings used to construct naval submarines. In particular, Bradken produces castings made of "HY-80" or "HY-100" high-yield steel. Bradken produces these castings as a subcontractor or supplier for companies that contract directly with the United States

Plea Agreement - 4
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Navy. The value of the contracts between the prime contractors and the Navy substantially exceed $1 million for each submarine.

      c.      The HY-80 and HY-100 castings produced by Bradken are critical components of the submarines on which they are installed, and some of the castings form part of the hull. As a result, it is critical that the mechanical properties of the castings (such as strength and toughness) meet rigorous specifications. These specifications are set forth in publications known as "Tech Pub 300" and "Military Specification 23008." The Tech Pub 300 and Military Specification 23008 specifications collectively will be referenced below as "the Specifications."

      d.      Each production of molten steel is known as a "heat." Each heat produces one or more castings, as well as test blocks, which are specimens of the steel used to test the characteristics of the steel in that heat. When Bradken delivers a casting to a prime contractor, it is required to report and certify the test results for the heat from which the casting was produced. The prime contractor, in reliance on those certifications, in turn certifies to the Navy that the submarine, including the components produced by Bradken, satisfies the Specifications. The Navy relies on these certifications in accepting submarines for service and making payments to the prime contractor.

      e.      *Metallurgical Testing at Bradken:* The Specifications require Bradken to perform certain tests on each heat. One of the required tests is known as the "Charpy V-notch" test. The Charpy V-notch test evaluates the toughness of the steel, that is, the amount of dynamic force the steel can withstand. One type of Charpy V-notch test involves cooling the specimen to -100 degrees Fahrenheit. The Specifications require the foundry to perform three -100°F Charpy V-notch tests for each heat, and further require that the average result for the three tests be no less than 50 foot-pounds, with no single value below 45 foot-pounds. If a casting does not satisfy the Specifications' Charpy-V notch requirements, this increases the risk that the component could fail under certain circumstances, such as a collision or a shock event, which may occur during wartime scenarios.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f. The Specifications also require a second test called the "tensile" test, part of which is called the "yield strength test." Tensile tests determine how steel will perform under tension load. HY-80 steel must be strong enough to withstand 80,000 pounds of force per square inch (psi) before it yields. HY-100 steel must be strong enough to withstand 100,000 psi before it yields. Accordingly, in order to meet the Specifications, an HY-80 heat must return yield strength test results in excess of 80 kips per square inch (ksi) (1 ksi equals 1,000 psi). HY-100 steel must return yield strength test results in excess of 100 ksi. If a casting does not satisfy the Specifications' yield strength requirements, the safety of the vessel is reduced because the vessel's design relies on the specified properties to safely perform routine operations and withstand shock events.

g. If a heat fails one or more tests, a steel producer may conduct a "reheat treatment," which involves placing the steel back into the oven in an effort to improve the heat's mechanical characteristics. If the heat passes all relevant Specifications in tests conducted after the reheat treatment, the producer may certify the heat using the post-reheat test results. However, under the Specifications, the producer may only rely on results conducted after the reheat treatment, that is, it may not combine some passing results from tests conducted before the reheat treatment with other passing results from tests conducted after the reheat treatment. This is because the reheat treatment changes the mechanical properties of the steel, so tests performed prior to the reheat treatment no longer reflect the steel's properties.

h. ***Thomas's Oversight of Bradken's Metallurgical Testing:*** Bradken conducts metallurgical testing in its metallurgical laboratory, which is overseen by the Director of Metallurgy. The Director of Metallurgy is responsible for ensuring that the steel meets the Navy's technical requirements, including the Specifications. The Director of Metallurgy must complete a "Certified Metallurgical Test Report" for each heat setting out the test results.

Plea Agreement - 6
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i. Between 1977 and May 22, 2017, Thomas served as a metallurgist, Metallurgy Lab Supervisor, Metallurgy Services Manager, and, from 2009 on, as Director of Metallurgy, for Bradken. Thomas's responsibilities included reviewing test results, determining whether those results complied with the Specifications, and then submitting and certifying the results to the prime contractor.

j. During Thomas's tenure at Bradken, when lab personnel performed a test, they typically recorded the test results on a notecard. Thomas or other lab personnel then copied the test results into a database known as "AS400." After 2008, test results were also entered into a second database known as "B&L." Bradken used the test results recorded in B&L when submitting certifications to the prime contractor.

k. ***Thomas's Falsification of Test Results:*** In some cases when Bradken's lab personnel recorded failing Charpy V-notch test results on testing notecards, Thomas altered the notecards to change the recorded Charpy V-notch results from a failing value to a passing value. Thomas sometimes changed the first digit of the test results on the notecard to increase the result by ten or twenty foot-pounds from a failing value to a passing value. For example, if the test returned a value of 37 foot-pounds (a failing value), Thomas sometimes altered the 3 so that it appeared to be a 5, creating the false appearance that the test result was 57 foot-pounds (a passing value).

l. Similarly, in some cases where Bradken's lab personnel recorded failing tensile yield strength test results on a notecard, Thomas altered the test cards to make it appear that the test had returned passing results. For example, in cases where an HY-80 heat returned a yield strength value between 70 and 79 ksi (a failing value), Thomas sometimes converted the first digit (the 7) to an 8, creating the appearance that the test had returned a passing result of 80 ksi or greater (a passing value).

m. In cases where she altered test results, Thomas typically entered the accurate (non-passing) test results into the AS400 database, but entered the falsified (passing) results into the B&L database. Thomas or others under her supervision then produced Certified Metallurgical Test Reports reporting the falsified numbers from the

Plea Agreement - 7
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

B&L database to the prime contractor. Thomas knew that the prime contractor would rely on those results when certifying to the Navy that the casting met the Specifications.

n. In cases where a heat failed one or more tests, Thomas sometimes ordered that the castings and test blocks be reheat treated. However, in some cases, the heats would again fail certain tests after the reheat treatment. In those cases, Thomas sometimes produced, and caused to be produced, Certified Metallurgical Test Reports that impermissibly combined certain passing test results from tests conducted prior to the reheat treatment with passing results from other tests conducted after the reheat treatment. These reports made it appear that the heat had passed all tests conducted after the reheat treatment when, as Thomas knew, the heat had failed some of the tests conducted after the reheat treatment, and therefore did not meet the Specifications.

o. Thomas also produced, and caused to be produced, Certified Metallurgical Test Reports that improperly reported results from informal tests known as "pretests." Under the Specifications, pretests may never be included on Certified Metallurgical Test Reports. These Certified Metallurgical Test Reports created the appearance that the heat had passed all respective tests, when in fact, as Thomas knew, the heat had failed some of the Specifications.

p. Investigators' review of Bradken's records concluded that, between 1985 and 2017, Thomas falsified one or more test results for at least 240 heats of high-yield steel provided to the United States Navy for installation in submarines, including heats that produced critical hull components. These 240 heats represented approximately 50% of all of the known high-yield steel that the foundry produced for installation on submarines over this period. The conduct imposed costs on the Naval Sea Systems Command (NAVSEA) that are estimated to be greater than $9,500,000 and less than $25,000,000.

q. ***Thomas's Statements to Bradken and Federal Investigators:*** On May 22, 2017, a Bradken metallurgist discovered evidence that THOMAS had falsified Charpy V-notch test results for one heat (heat number 433415). When members of

Plea Agreement - 8
United States v. Elaine Thomas, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Bradken management confronted Thomas, she admitted to falsifying the test results for heat 433415, and made statements suggesting that she had also falsified other test results. However, in a subsequent interview with her employer, Thomas recanted this admission.

    r.    ***The Charged Alterations:*** As set forth above, between approximately 1985 and May 22, 2017, Thomas knowingly devised and executed a scheme with the intent to defraud the United States Navy, and to obtain money and property by means of materially false and fraudulent pretenses and representations in connection with a contract with the United States with a value in excess of $1 million. As one example of this conduct, on or about March 17, 2016, Thomas caused to be submitted to the prime contractor a Certified Metallurgical Test Report for heat 433415 certifying that the results for the Charpy V-Notch tests were 53, 47, and 56 foot-pounds, when in fact, as Thomas knew, the true test results were 33, 27, and 36 foot-pounds.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

    8.    **Agreements Regarding Application of Sentencing Guidelines.** The parties agree that the applicable Sentencing Guideline calculation is as follows:

    a.    A base offense level of six (6) pursuant to USSG § 2B1.1(a)(2);

    b.    A twenty (20) level enhancement pursuant to USSG § 2B1.1(b)(1)(K) because the loss exceeds $9,500,000, but is less than 25,000,000; and

    c.    A two (2) point enhancement pursuant to USSG § 3B1.3 because the defendant abused a position of public or private trust or used a special skill in a manner that facilitated the commission or concealment of the offense.

Defendant understands that the government will argue that under USSG § 2B1.1(b)(16) an additional 2-point enhancement should apply on the theory that the offense involved the conscious or reckless risk of death or bodily injury.

Plea Agreement - 9
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

10. **Recommendations Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties agree that the government will recommend a custodial sentence no longer than the low end of the United States Sentencing Guidelines range as determined by the Court at the time of sentencing. Defendant is free to recommend any sentence. Defendant understands that this recommendation is not binding on the Court, and the Court may reject these recommendations and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

11. **Restitution.** Restitution for the losses incurred by the United States in this matter has already been paid by the defendant's employer. In light of this prior payment of the full obligation, no further restitution payment is due from Defendant.

12. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United

Plea Agreement - 10
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the

Plea Agreement - 11
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

14. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plearequired by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

    b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to

Plea Agreement - 12
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

16. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

17. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated: November 8, 2021.

_____
ELAINE THOMAS
Defendant

_____
JOHN CARPENTER
Attorney for Defendant

_____
SETH WILKINSON
Assistant United States Attorney

Plea Agreement - 13
*United States v. Elaine Thomas*, CR20-5244

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970